UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENNECO AUTOMOTIVE
OPERATING CO., INC.,

        Plaintiff,

vs.

Case No. 08-CV-10467
HON. GEORGE CARAM STEEH

KINGDOM AUTO PARTS, et al.,

        Defendants.

_____/

ORDER DENYING TENNECO'S MOTION FOR RELIEF FROM ORDER (#111)

Plaintiff Tenneco Automotive Operating Co., Inc., moves under Federal Rule of Civil Procedure 60(b)(2) and (3) for relief from this court's September 25, 2008 Order denying Tenneco's motion for a preliminary injunction. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

I.

After a July 7, 2008 hearing, the court denied Tenneco's motion for a preliminary injunction seeking to enjoin Kingdom Auto Parts ("KAP") from stamping Tenneco part numbers onto KAP automotive struts, from selling KAP struts under the name "Quick-Strut," and from copying Tenneco's "Quick-Strut Installation Instructions." The court found that KAP had produced convincing evidence that it had taken significant steps to stop stamping Tenneco part numbers onto KAP struts, beginning with KAP's March 2008 inventory, that a new KAP policy advised KAP salespersons not to sell KAP "PRIME CHOICE StrutTEK" struts as a "Monroe Quick-Strut" or "Quick-Strut," that KAP changed

its packaging to more clearly reflect that KAP's "CSTxxxxxx" part number "REPLACES" Tenneco's "171xxxxx" part number, that KAP instructed a customer not to use a customer pricing sheet prominently titled "KINGDOM STRUTS" while listing Tenneco part numbers, and that KAP had created new strut installation instructions, and would no longer package instructions with its struts.  The court rejected Tenneco's argument that KAP should be ordered to recall all of its inventory stamped with Tenneco's product numbers, based in part on KAP President Gary Calagoure's testimony that "customers with larger inventories 'would be turning their inventory more often,' and that on average, 'most wholesale distributors that we sell to, they turn their inventory at least once every 30 days,' or 'anywhere from 10 to 12 times a year.'"  September 25, 2008 Order, at 6, 13.  The court found it was "likely that few, if any, KAP struts stamped with Tenneco product numbers and/or packaged with the original 'STRUT-TEK INSTALLATION INSTRUCTIONS' remain in inventory."  Id. at 13.

The court also held that "Tenneco has not demonstrated a strong likelihood of success on the merits of its unfair competition claims premised on KAP's use of Tenneco's stamped part numbers and alleged selling of KAP struts under the "Quick-Strut" mark, or its claim of copyright infringement."  Id. at 14.  The court found Tenneco had not made a strong showing that its part numbers had acquired requisite "secondary meaning" under the Lanham Act to support its unfair competition claims.  Id. at 14-15 (citing Westward Co. v. GEM Products, Inc., 570 F.Supp. 943, 947 (E.D. Mich. 1983), and Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 311-312 (6th Cir. 2001)).  Tenneco filed a notice of appeal of the decision on September 26, 2008.

II.

In support of its Rule 60(b) motion for relief from judgment based on newly discovered evidence and fraud, Tenneco proffers evidence that: (1) Tenneco Counsel

2

Jason Benedict purchased a KAP strut from Washington Auto Parts and Paint in Johnston, Ohio on November 10, 2008, the strut was stamped as manufactured on July 8, 2008, the strut was stamped with both KAP's and Tenneco's part number, and the receipt reflected KAP's part number; (2) Tenneco Counsel Michael Loi purchased a KAP strut from BMP in Ferndale, Michigan on November 12, 2008, the strut was stamped as manufactured on April 5, 2008, the strut was stamped with both KAP's and Tenneco's part number, and the receipt reflected KAP's part number; (3) Tenneco Counsel Loi purchased a KAP strut from Webco Brake and Clutch, Inc. in Peekskill, New York on November 19, 2008, the strut was stamped as manufactured on July 8, 2008, the strut was stamped with both KAP's and Tenneco's part number, and the receipt reflected KAP's part number; (4) Tenneco Sales Manager Jeff Abbot purchased a KAP strut from Bumper to Bumper in Madison, Wisconsin on October 22, 2008, the strut was stamped as manufactured on April 20, 2008, the strut was stamped with both KAP's and Tenneco's part number, the receipt reflected KAP's part number, Bumper to Bumper used Tenneco's part number on a shipping label when returning two KAP struts to KAP, September 11, 2008 and October 28, 2008 packing slips and invoices issued by KAP to Bumper to Bumper used KAP's and Tenneco's part numbers; (5) Tenneco Counsel Thomas Francis inspected the KAP strut inventory of Discount Automotive in Chicago, Illinois on November 20, 2008, one of the packaged struts contained KAP installation instructions, and July 11, 2008 packing slips and invoices issued by KAP to Discount Automotive used KAP's and Tenneco's part numbers. Tenneco also draws the court's attention to KAP President Calagoure's July 10, 2008 Third Declaration attesting that he directed KAP's distribution center on July 8, 2008 to cover stamped Tenneco part numbers on existing KAP struts with "a permanent black label," that "from July 8, 2008 forward, no [KAP] product inventory will be shipped from our distribution centre with a Monroe part number viewable on the product," and that an "Executive Summary"

3

published by the Automotive Aftermarket Industry Association for the year 2006 showed that the average rate of inventory turnover for automotive replacement parts ranges "from 3.3 (approximately 109 days) . . . to 4.3 (approximately 84 days)." Tenneco argues that this evidence demonstrates KAP President Calagoure committed fraud by testifying at his July 1, 2008 deposition and at the July 7, 2008 hearing that KAP's foreign supplier had stopped stamping Tenneco part numbers onto KAP struts beginning with KAP's March 2008 inventory, by testifying that KAP customer inventory would turn over "at least once every 30 days," and that KAP had stopped including installation instructions in its packaging. Tenneco also asks the court to reevaluate the weight it assigned to the opinions of Tippie, Enos, and Torbitt in concluding that Tenneco failed to demonstrate a strong likelihood that Tenneco's part numbers had acquired "secondary meaning." Tenneco also notes that the court referred to Tenneco's part numbers as "generic" (the common name of the object) rather than "descriptive" (describing the object in question). See Westward Co., 570 F.Supp. at 947.

III.

To prevail on a motion for relief from judgment under Rule 60(b)(2) based on "newly discovered evidence," the moving party must demonstrate that the newly discovered evidence is material and controlling and clearly would have produced a different result if presented before the original [order]." Good v. Ohio Edison Co., 149 F.3d 413, 423 (6th Cir. 1998) (quoting New Hampshire Ins. Co. v. Martech U.S.A., Inc., 993 F.2d 1195, 2001-02 (5th Cir. 1993)). To prevail on a motion for relief from judgment under Rule 60(b)(3) based on "fraud," the movant "has the burden of establishing the misrepresentation and its impact by clear and convincing evidence." A& B. Steel Shearing & Processing, Inc. v. United States, 174 F.R.D. 65, 67 (E.D. Mich. 1997). Whether to grant relief under Rule 60(b)(2) or (3) rests in the discretion of the district court. Id; Good, 149 F.3d at 423.

4

The evidence proffered by Tenneco would not have clearly produced a different result or impact on the September 25, 2008 denial of Tenneco's motion for a preliminary injunction.  In responding to Tenneco's motion, KAP proffers an April 3, 2008 e-mail from KAP President Calagoure asking for confirmation from someone at the e-mail address "sales@hanasia.com" to confirm that "other company logo's or stampings other than [KAP's] should not be used on the mount, spring, or strut[.]" KAP also proffers a "Letter of Declaration" from Yangzhou Focus Shock Absorber Co., Ltd, Jiangsu, China, with e-mail address "trade@hanasia.com," explaining:

> All above changes will be used in the coming shipment, with the exception of the stamping of the alphanumeric part code.  The stamping will be changed after the sale and shipment of pre-produced parts containing the formerly used part codes.
>
> Any further changes from this point on -- would require negotiation and approval from both parties.

While the evidence proffered by Tenneco shows that Tenneco part numbers were being stamped onto KAP struts as late as July 8, 2008, the court is persuaded by the April 3, 2008 e-mail and the "Letter of Declaration" that Calagoure's testimony that his Chinese supplier had stopped stamping Tenneco's part numbers onto KAP's struts by March 2008 was the result of misplaced confidence as opposed to a false statement of fact made for the purpose of misleading the court.  Calagoure's opinion testimony that KAP's customer's average strut inventory turnaround time was "at least once every 30 days" or "anywhere from 10 to 12 times a year" is not rendered fraudulent by 2006 statistics issued by the Automotive Aftermarket Industry Association regarding "automotive replacement parts" having a turnover range of 84 to 109 days.

To the extent Tenneco's proffered evidence indicates it will take longer for KAP to exhaust its inventory of struts stamped with both the KAP part number and Tenneco part number, and that KAP uses both the KAP part number and Tenneco part number in KAP

5

packing slips and invoices, this evidence does not warrant granting Tenneco's motion for a preliminary injunction in the remaining absence of a strong showing that Tenneco's part numbers have acquired "secondary meaning." Westward Co., 570 F.Supp. at 947; Herman Miller, Inc., 270 F.3d at 311-312.  The court declines Tenneco's invitation to reevaluate the evidentiary weight the court assigned to the opinions of Tippie, Enos, and Torbitt based on evidence that four KAP customers issued receipts bearing Tenneco's part numbers, and one KAP customer used a Tenneco part number on a KAP return label.  This new evidence does not constitute clear evidence that the issuers of the receipts and return label were confused into believing that the KAP struts were manufactured by Tenneco.  Likewise, KAP's own use of both a Tenneco part number and KAP part number in invoices and packing slips falls short of establishing "secondary meaning."  One instance of finding KAP installation instructions packaged with a KAP strut is not clear evidence that KAP and Calagoure are voluntarily stopping the practice.

In sum, the evidence proffered by Tenneco does not support granting Tenneco's motion for a preliminary injunction to enjoin KAP from stamping Tenneco part numbers onto KAP automotive struts, from selling KAP struts under the name "Quick-Strut," or from copying Tenneco's "Quick-Strut Installation Instructions."  The court remains persuaded that KAP has taken significant steps to stop stamping Tenneco part numbers onto KAP struts, that KAP has attempted to cover existing KAP struts bearing Tenneco part numbers with "a permanent black label" (notwithstanding Tenneco's argument that the labels lack permanence), and that KAP is no longer using installation instructions.  Tenneco does not challenge KAP's efforts in changing packaging labels and monitoring customer pricing sheets.  Conceding that Tenneco's part numbers are better referred to as "descriptive" as opposed to "generic," Tenneco has nonetheless failed to proffer strong evidence that its part numbers have acquired "secondary meaning" in the market place.

Tenneco has not demonstrated that a result different than the denial of its motion for a preliminary injunction is warranted under the circumstances. A& B. Steel, 174 F.R.D. at 67; Good, 149 F.3d at 423. The court need not address the parties' procedural and jurisdictional arguments. Accordingly,

Tenneco's motion for relief from judgment under Rule 60(b)(2) and Rule 60(b)(3) is hereby DENIED.

SO ORDERED.

Dated: January 20, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 20, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk