UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENNECO AUTOMOTIVE
OPERATING COMPANY INC.,

        Plaintiff,

vs.

Case No. 08-CV-10467
HON. GEORGE CARAM STEEH

KINGDOM AUTO PARTS and
PRIME CHOICE AUTO PARTS,

        Defendants.

_____/

ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT ON PLAINTIFF'S TRADE DRESS INFRINGEMENT
CLAIMS AS MOOT [DOC. 87]; GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF CLAIMS BASED ON COPYING OF TENNECO'S
WARNING LABEL AS PREEMPTED BY FEDERAL COPYRIGHT LAW
[DOC. 85]; GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF CLAIMS ON THE BASIS OF UNAUTHORIZED USE
OF PLAINTIFF'S "QUICK-STRUT' MARKS [DOC. 86]; AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
<u>DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIM [DOC. 119]</u>

      Defendants Kingdom Auto Parts and Prime Choice Auto Parts (collectively "KAP") filed four separate motions for summary judgment, which were heard by the Court on March 30, 2009. For the reasons set forth below, KAP's Motion to Dismiss or for Summary Adjudication on Plaintiff's Trade Dress Infringement Claims is DENIED as MOOT; Motion for Summary Adjudication of Claims Based on Copying of Tenneco's Warning Label as Preempted by Federal Copyright Law is GRANTED; Motion for Summary Adjudication of Claims on the Basis of Unauthorized Use of Plaintiff's "Quick-Strut" Marks is GRANTED; and Motion for Summary Judgment on Defendants' Declaratory Judgment Counterclaim is GRANTED.

## I. Background

Tenneco manufactures and distributes automotive shock absorbers and struts as a domestic corporation situated in Illinois. KAP sells automotive struts from its location in Ottawa, Ontario. Tenneco's Second Amended Complaint alleges KAP is manufacturing and selling struts under the name "Quick-Strut" in violation of Tenneco's "Quick-Strut" mark. Tenneco further accuses KAP of manufacturing and selling struts that are engraved with Tenneco's unique product numbers, without authorization. Tenneco alleges a Lanham Act claim of trademark infringement, 15 U.S.C. § 1114, based on KAP's use of the "Quick-Strut" Registered Mark, which use is likely to cause confusion or mistake among customers. The Second Amended Complaint also alleges a Lanham Act claim of false designation of origin, 15 U.S.C. § 1125, based on KAP's unauthorized use of the stamped product number and the "Quick-Strut" mark, a copyright infringement claim, 17 U.S.C. § 501, based on KAP's alleged unauthorized copying of Tenneco's "Quick-Strut Installation Instructions", a Lanham Act claim of false or misleading advertising, 15 U.S.C. § 1125, based on KAP's alleged copying of Tenneco's warning label, and state law claims of unfair competition, violation of the Michigan Consumer Protection Act (MCPA), M.C.L. §§ 445.901, et seq., and tortious interference with prospective economic advantage.

Defendants have filed the following motions: Motion to Dismiss or for Summary Adjudication on Plaintiff's Trade Dress Infringement Claims; Motion for Summary Adjudication of Claims Based on Copying of Tenneco's Warning Label as Preempted by Federal Copyright Law; Motion for Summary Adjudication of Claims on the Basis of Unauthorized Use of Plaintiff's "Quick-Strut" Marks; and Motion for Summary Judgment on Defendants' Declaratory Judgment Counterclaim.

## II. Motion for Summary Judgment - Trade Dress

Tenneco's Second Amended Complaint accuses defendants of attempting to pass off their strut assemblies as those of Tenneco, based on the strut assemblies being confusingly similar in appearance to those of Tenneco:

> 46. The willful nature of Defendants' attempt to pass off their Struts as genuine Tenneco struts is further evidenced by:
>
>     a) the fact that the Defendants' struts are manufactured with a glossy black color that is identical to the unique glossy black color utilized by Tenneco on its strut assemblies in the aftermarket...
>
>     b) Defendants' Strut Assemblies have the exact same boot design and bumper design as the unique and proprietary designs used by Tenneco.
>
>     c) Defendants' sales personnel show Defendants' Strut Assemblies to prospective customers without the packaging. Defendants' Strut Assemblies do not indicate the country of origin (China), and are confusingly similar in appearance to Tenneco's "Quick-Strut" strut assemblies.

Defendants move to dismiss any claim of trade dress that plaintiff may be asserting, arguing that plaintiff has failed to state a claim. Trade dress is described as the "design or packaging of a product" which has acquired a "secondary meaning" sufficient "to identify the product with its manufacturer or source." General Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, (6th Cir. 2006) (quoting TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28 (2001)).

Plaintiff makes it clear in its response and at oral argument that it is not pursuing a claim of trade dress infringement. Instead, plaintiff makes allegations like those quoted above to show that defendants intended to make their strut assemblies confusingly similar in appearance to plaintiff's products. Such evidence supports plaintiff's Lanham Act claims of false designation of origin and false or misleading advertising. It is plaintiff's contention that defendants perpetrate a fraud on the public when they present their struts to potential

3

customers in unpackaged form, coupled with their duplication of the struts' appearance, down to the use of Tenneco's unique product numbers.

Because plaintiff has disclaimed any trade dress claim, defendants' motion to dismiss is denied as moot. The Court does note that the particular allegations of copying in paragraph 46 quoted above relate to the copying of things, i.e. glossy black color and boot and bumper design, not protected by an intellectual property right. As such, public policy favors copying such unprotected items. TrafFix Devices, Inc. v. Marketing Displays, Inc., 523 U.S. 23, 29 (2001); Gray v. Meijer, Inc., 295 F.3d 641, 650 (6th Cir. 2002).

### III. Motion for Summary Judgment - Preemption

Tenneco's Second Amended Complaint avers, in Count Four (False or Misleading Advertising in Violation of Lanham Act), as follows:

> 74. Defendants have used, and are continuing to use in commercial advertising or promotion in interstate commerce, a copy of Tenneco's warning label which depicts the process for: (1) retracting the piston into the unassembled strut; and (b) locking the piston into place with a t-bolt, despite the fact that Defendants' Struts do not perform this function.

In Count Six (Violation of Michigan's Consumer Protection Act), the Complaint avers:

> 91. Defendants' unauthorized use of Tenneco's "Quick-Strut" Marks, unique product numbers, copying of Tenneco's "QUICK-STRUT INSTALLATION INSTRUCTIONS," representations of compliance with OEM specifications and copying of Tenneco's warning label (despite lack of corresponding product feature) constitute "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce" in violation of Michigan's Consumer Protection Act, M.C.L. § 445.903.

Defendants move for summary judgment on the basis that any right sought to be protected, which is the equivalent to any of the exclusive rights within the general scope of copyright, are governed exclusively by the Copyright Act, 17 U.S.C. § 301(a). Defendants contend that Tenneco's Lanham Act and Michigan Consumer Protection Act claims are based on allegations of copying, and are therefore preempted by federal copyright law.

4

Tenneco's position is that it is not alleging a violation of the Copyright Act in Count Four or Count Six, and that it only uses the word "copying" to show that defendants acted willfully in attempting to pass off their strut assemblies as genuine Tenneco products, which, it claims, would be in violation of the Lanham Act and Michigan's Consumer Protection Act. However, as noted above, public policy favors copying, unless an item is protected by an intellectual property right such as a patent or copyright. TrafFix Devices, Inc. v. Marketing Displays, Inc., 523 U.S. at 29; Gray v. Meijer, Inc., 295 F.3d at 650. Permitting a plaintiff to use evidence of copying to support an element of a cause of action indirectly, where they would not be permitted to maintain a direct cause of action because of preemption under the Copyright Act, goes against public policy.

Count Four of the Second Amended Complaint, which alleges false or misleading advertising in violation of the Lanham Act, is based entirely on defendants' copying plaintiff's warning label and pledge. The Court finds this claim to be preempted by the Copyright Act, 17 U.S.C. § 301(a).

Count Six alleges violation of Michigan's Consumer Protection Act due in part to the copying of plaintiff's installation instructions and warning label. Plaintiff also bases its MCPA claim on the unauthorized use of its "Quick-Strut" Mark and unique product numbers. To the extent that plaintiff alleges copying, this claim is also preempted by the Copyright Act. Due to the holdings made below, the Court finds that plaintiff does not have a protectable interest in its product numbers, and there has been no infringement of its Quick-Strut marks. Therefore, defendants' motion for summary judgment that the allegations of copying in Counts Four and Six are preempted by the Copyright Act is GRANTED.

5

## IV. Motion for Summary Judgment - Trade Mark Infringement

In the General Allegation section of Tenneco's Second Amended Complaint, Tenneco makes allegations relating to the unauthorized use of its Quick-Strut marks by defendants.

29. Defendants have and continue to manufacture, distribute, export, sell and/or offer for sale strut assemblies ("Defendants' Strut Assemblies") using an unauthorized reproduction, copy and/or counterfeit of Tenneco's "Quick-Strut" Marks in the United States.

30. Among other things, Defendants' sales personnel refer to Defendants' Strut Assemblies as "Quick-Strut" products when calling on customers located within the United States.

31. Among other things, Defendants caused to be published, or knew or had reason to know that third parties would publish, a price list using Tenneco's "Quick-Strut" Marks and unique product numbers in association with Defendants' Strut Assemblies in and around the greater-Chicago, Illinois area.  See Exhibit 2.  (Exhibit 2 is the Declaration of David Drake, which has an attached price list with "Kingdom Struts" in the heading and the words "Quick Strut" as the part description.)

Defendants contend that the Lanham Act does not reach conduct in Canada by a Canadian company.  In Steele v. Bulova Watch Co., 344 U.S. 280, 283, 286 (1952), the Supreme Court interpreted the jurisdictional scope of the Lanham Act, stating it extends to "all commerce which may lawfully be regulated by Congress."  The Court concluded, "a United States district court has jurisdiction to award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." Id. at 281.

This Court previously addressed the issue of jurisdiction over Tenneco's Lanham Act claim, finding that the Lanham Act claim survived a Fed. R. Civ. P. 12(b)(1) challenge to the Court's subject matter jurisdiction.  The Court was careful to make clear that it was not addressing a challenge under Rule 12(b)(6) for failure to state a claim at that time.  (June 17, 2008 Order, Doc. 40).

The only clear use of Quick-Strut" by either defendant was at a trade show held in Toronto, Ontario, Canada in November 2007. Defendants describe this one-time occurrence as inadvertent and discontinued. In an attempt to show that defendants' use of the Tenneco mark was on-going, and wide-reaching, Tenneco points to web pages related to the Toronto trade show, which display Tenneco's Quick-Strut marks. Tenneco claims that defendants are responsible for creating this display, which is accessible by anybody over the Internet. The exhibit is supported by the declaration of Lisabeth Coakley, one of Tenneco's counsel. The web page appears on the website of automechanica CANADA, the sponsor of the Toronto trade show. There is no indication that defendants were responsible for any of the material appearing on the website. It is plaintiff's burden to prove that the use of a mark is attributable to defendants, and in this case there are only inferences, which are too weak to sustain plaintiff's burden.

Defendants next argue that they have never referred to their StrutTEK Strut Assemblies as "Quick-Strut" in the United States. Neither defendant employs any sales personnel in the United States. Defendant Kingdom Auto Parts is represented through independent sales companies, such as Jim Dolmetsch's company. Tenneco provides the declaration of Steven Siegel to support its claim that defendants "used" Tenneco's marks. Siegel states that James Dolmetsch referred to the StrutTEK strut assembly by the term "Quick Strut". Mr. Dolmetsch appeared on July 7, 2008 at the evidentiary hearing before this Court, and testified that he has "absolutely not" misidentified the StrutTEK mark as a product of Monroe or a Quick Strut. Mr. Siegel failed to appear at the evidentiary hearing and could not defend his declaration under cross-examination. There is no credible evidence to refute Mr. Dometsch's testimony.

Defendants maintain that they had no involvement in the Auto-Wares Price Sheet, referred to in paragraph 31 of the Second Amended Complaint. Tenneco offers the Drake

7

Declaration in support of the price sheet. At paragraph 6, the Drake Declaration states, ". . . I saw what appeared to be a Kingdom Auto Part's price sheet." Scott Grill, Vice President of Auto-Wares, said in his declaration that the price list was produced by Auto-Wares' pricing department, without any involvement or knowledge of either defendant. Furthermore, at the request of Gary Calagoure, who is the President of both defendants, Grill pulled the price list and replaced it with a new price list making reference to "StrutTEK". (Grill Declaration at ¶¶ 3, 4).

Both defendants are Canadian corporations. The only clear use of the mark by defendants took place in Canada. A Lanham Act claim, therefore, cannot be based on defendants' use of the Quick Strut marks. Summary judgment is GRANTED as to Count One, which alleges trademark infringement based on unauthorized use of the Quick Strut marks. Summary judgment is GRANTED IN PART as to Count Two, to the extent that it alleges a violation of the Lanham Act based on the unauthorized use of the Quick-Strut marks. Summary judgment is GRANTED IN PART as to Count Five, tortious interference with prospective economic advantage, to the extent it alleges unauthorized use of the Quick-Strut marks. Summary judgment is GRANTED IN PART as to Count Six, violation of Michigan Consumer Protection Act, to the extent it alleges unauthorized use of the Quick-Strut marks. Summary judgment is GRANTED IN PART as to Count Seven, which alleges common law unfair competition and trademark infringement, to the extent it is based on the allegation of use of the Quick-Strut marks.

### V. Motion for Summary Judgment - Counterclaim

Defendants filed a counterclaim for declaratory judgment that Tenneco's product numbers do not qualify for protection as trademarks. Defendants have now brought a motion for summary judgment on their counterclaim. Tenneco uses six-digit part numbers, an example being the Monroe Quick-Strut having the number 171994. Tenneco contends

8

that its customers associate its product numbers with a single source, that being Tenneco, and that its product numbers have acquired secondary meaning. Defendants, on the other hand, argue that the product numbers merely describe a particular part, and are not inherently distinctive such that they would be entitled to trademark protection.

It is true that the numbers making up the six-digit product number contain descriptive information. The "1" in the first position designates a strut assembly, the "71" in the second and third positions designates the particular model of strut, in this case a "Sensa-Trac" strut. The "994" in the last three positions designates the particular product application, in this case a 2002 Ford Escort. (Bill Dennie Declaration, May 12, 2008, ¶¶ 11, 12 [Doc. 27-3]).

Tenneco has a history of attempting to register its six-digit numeric product numbers with the U.S. Patent and Trademark Office ("PTO"). On June 16, 2008, the Trademark Examining Attorney issued an Office Action refusing registration of "171994" on the following ground:

> Registration is refused because the applied-for-mark, as used on the specimen of record, merely identifies a model number; it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods.

Tenneco submitted a Response to Office Action on July 3, 2008, which included the 27 Customer Declarations that have been submitted to the Court in support of Tenneco's motion for preliminary injunction. On July 31, 2008, the PTO issued a second Office Action wherein the Trademark Examining Attorney maintained the refusal to register Tenneco's six-digit numeric product numbers on the ground they do not function as trademarks.

On February 11, 2009, the PTO determined that Tenneco's product numbers are inherently distinctive and approved the product numbers for publication and registration. A Notice of Publication was issued on March 4, 2009, and the mark was Published for

Opposition on March 24, 2009. However, the PTO subsequently determined that the examining attorney erroneously approved the application for publication and erroneously encouraged applicant to withdraw its claim of acquired distinctiveness. The Trademark Examiner then refused to register Tenneco's product number as a mark because it "merely identifies a model number; [it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods]."

The PTO withdrew Tenneco's nine applications for the 171 series of part numbers from publication. On April 6, 2009, the PTO issued Office Actions which reinstated the previously issued refusals to register the part numbers for failure to function as trademarks: "The evidence in the record overwhelmingly points to use of the applicant's mark as a model or part number. Therefore, registration must be refused on the Principal Register."

The PTO had the following comment about the 27 Declarations Tenneco submitted as evidence of secondary meaning:

> Applicant's declarations are from dealers and distributors of auto parts, but evidence in the record shows that ordinary retail customers purchase strut assemblies too, and these purchasers may be less aware of part numbers, and more interested in the brand names like QUICK STRUT and SENSA-TRAC that applicant uses on its goods.

Tenneco admits that its product numbers are descriptive because they are readily decoded into information regarding type of product. (Brief in Support of Tenneco's Rule 60 Motion, p. 15 [Doc. 111], filed Nov. 24, 2008). However, Tenneco also contends that its product numbers have acquired secondary meaning. In order to receive trademark protection, the product numbers must be shown to have acquired secondary meaning. R&B, Inc. V. Needa Parts Mfg., Inc., 418 F.Supp.2d 684, 699-700 (E.D. Pa. 2005). To determine whether secondary meaning exists, the Court looks to factors including:

> (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) the amount and manner of advertising; (5) the

amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying.

Herman Miller, Inc. v Palazetti Imports and Exports, Inc., 270 F.3d 298, 311-312 (6th Cir. 2001).

Tenneco sells its Quick-Strut assemblies to aftermarket auto parts warehouses, jobbers, installers, and retailers. Tenneco's customers then sell the Quick-Strut assemblies to the general public, who install the assemblies on their cars. Tenneco submits 27 Declarations from among its customers, who testify that they associate Tenneco's product numbers with Tenneco and Tenneco's Monroe brand. Tenneco argues that where the relevant buyer class consists of both dealers and ultimate consumers, the state of mind of the dealers is important, and can create a genuine issue of material fact to prelude summary judgment. Thomas & Betts Corp. V. Panduit corp., 138 F.3d 277, 294 (7th Cir. 1998); 2 McCarthy On Trademarks § 15:46.

Defendants object to the 27 Declarations because they are unsworn witness statements, and therefore should not be considered by the Court. Federal statute provides that unsworn declarations must be made on penalty of perjury. 28 U.S.C. § 1746. Rule 56(e) provides that evidence in support or opposition of a motion for summary judgment be presented in the form of an affidavit, and therefore sworn to, and made on personal knowledge. In the case of the 27 Declarations, neither of these safeguards are present. The statements, which are standardized and identical, state that "I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true." Witness statements must be made on personal knowledge, and not on information and belief. The Court is concerned that the declarations are not notarized, are not clearly based on personal knowledge, and that defendants' attempts to conduct discovery into the unsworn witness statements were

11

thwarted due to the alleged disappearance of documents and electronically stored information. Under the circumstances surrounding the 27 Declarations, the Court will not consider them in making its determination with regard to defendant's motion for summary judgment on its counterclaim.

Tenneco submits the Declaration of Richard Alameddine, Vice President of Marketing for Tenneco, in support of its opposition to the motion for summary judgment on defendants' counterclaim. Defendants object to the Alameddine Declaration for several reasons, including that it presents sales and advertising data that was not turned over by Tenneco within the time parameters dictated by the Court's discovery order dated December 18, 2008. Defendants also allege that the Alameddine Declaration contains improper expert opinion testimony that should be excluded. Mr. Alameddine purports to give his opinion on what is occurring in the minds of consumers who observe Tenneco's part numbers. (Alameddine Decl. ¶¶ 5, 12). The Court will not consider the opinion testimony in paragraphs 5 and 12, but will otherwise accept the Alameddine Declaration and consider it along with all the other evidence in the case.

Tenneco avers that it has continuously used its product numbers beginning with the prefix "71" to distinguish its Monroe Sensa-Trac brand struts from competitors' products since 1983. In 2003, Tenneco introduced its Monroe Quick-Strut assemblies, and added the numeral "1" to the "71" prefix, so that it now reads "171". Tenneco uses its product numbers on product packaging, sales catalogs, sell sheets, price lists and promotional rebates.

The six-digit product number appears on a white label in a large, bold font, to distinguish it from other numbers on the packaging and to identify what product is contained in the package. The number always appears with Tenneco's Monroe mark on the package. Tenneco argues that the presence of multiple marks appearing together does not diminish

12

the significance of Tenneco's product number as a source identifier. In addition, Tenneco argues that the product number is the only way to determine that the product inside is a Quick-strut assembly. At least as it pertains to the end consumer, the use of multiple marks appearing together suggests that the product number has a different purpose than identifying the product as belonging to Tenneco. The Monroe mark identifies the source of the product, and the number identifies the type of product contained inside the package.

Tenneco explains that it has spent over $1.1 million printing and distributing materials which include its product numbers, to over 75,000 potential and existing customers. However, there is no evidence that Tenneco's advertising is directed to connecting its product numbers with its identification as the source of those products.

Tenneco argues that defendants intentionally copied the product numbers by having them stamped on the strut assemblies, and that such intentional copying is evidence of secondary meaning. Esercizio v. Roberts, 944 F.2d 1235, 1239 (6th Cir. 1991). Defendants duplicated Tenneco's Quick-Strut assembly exactly, including having Tenneco's product numbers stamped directly onto the parts. However, this type of wholesale copying would only be relevant in a trade dress case where the plaintiff was seeking protection of intellectual property rights in the look or overall appearance of the product. Esercizio is a trade dress case. Tenneco is not claiming trade dress infringement, therefore intentional copying is not relevant.

There is no clear evidence in this case supporting Tenneco's claim to a protectible interest in its product numbers. Defendants' expert Kenneth Enborg has opined that:

> Tenneco's six-digit part numbers do not qualify as trademarks, but instead are descriptors that use a numeric code separately assigned to each strut assembly to describe its (i) product type and (ii) application to a particular vehicle chassis. (Enborg Decl., ¶ 28).

The evidence supports Mr. Enborg opinion. In addition, while not binding on this Court, the fact that the PTO has refused to register Tenneco's product numbers as trademarks because they do not function to identify and distinguish Tenneco's goods from those of others is persuasive. The Court finds that the product numbers have not acquired secondary meaning such that they function as a source identifier for Tenneco's strut assemblies. Because the Court finds that product numbers are not entitled to trademark protection, use of them by defendants is not prohibited.

Summary judgment is therefore GRANTED on defendants' counterclaim which seeks declaratory judgment of no trademark protection in Tenneco's product numbers. This finding that Tenneco's product numbers are not entitled to trademark protection means that summary judgment is granted in favor of defendants on Counts Two, Five, Six and Seven. The only count remaining in the Second Amended Complaint is Count Three, alleging copyright infringement due to defendants' copying of Tenneco's installation instructions.

Dated: May 18, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 18, 2009, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk